IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
(CENTRAL DIVISION)

Civil Action No. 14CV3045

BRADLEY K. OELTJENBRUN

    Plaintiff,

v.

FEDERAL CROP INSURANCE CORPORATION,

    Defendant.

---

**COMPLAINT FOR JUDICIAL REVIEW AND DECLARATORY RELIEF**

---

Plaintiff, Bradley K. Oeltjenbrun, states as follows for his Complaint for Judicial Review and Declaratory Relief against the Federal Crop Insurance Corporation ("FCIC").

### Parties

1. Plaintiff is an individual residing in Clear Lake, Iowa.

2. The FCIC is a wholly-owned government corporation within the United States Department of Agriculture ("USDA"). *See* 7 U.S.C. § 1503.

### Jurisdiction and Venue

3. This Court has jurisdiction pursuant to 7 U.S.C. § 1508 and 5 U.S.C. §§ 701-06.

4. Venue is proper pursuant to 7 U.S.C. § 1508(j)(2) and 28 U.S.C. § 1391.

1

## Background

5. Pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501 *et seq.*, crop insurance is offered through private approved insurance providers ("AIPs") and reinsured and regulated by the FCIC. The Risk Management Agency ("RMA"), an arm of the USDA, manages and operates the federal crop insurance program on behalf of the FCIC.

6. Plaintiff farms land in Cerro Gordo County, Iowa. In 2002, Plaintiff purchased a Crop Revenue Coverage policy (the "Policy") from American Growers Insurance Company ("AGIC") for his soybeans. Crop Revenue Coverage ("CRC") insurance is designed as a risk management tool to insure against revenue loss due to low yields, low prices, or a combination thereof. Under a CRC policy, a revenue guarantee is set for a particular producer and indemnity payments are due when actual revenue falls below the guarantee.

7. In June 2002, several of Plaintiff's soybean fields were damaged in a severe hail storm. Plaintiff immediately reported his anticipated losses, and after consulting with AGIC, elected to continue to care for the soybeans until harvest in hopes that they would recover and produce a good yield.

8. Unfortunately, several of Plaintiff's fields did not fully recover. As a result, Plaintiff sustained significant yield losses. After reviewing Plaintiff's claim, AGIC paid an indemnity to Plaintiff in the amount of $59,313.00 for Plaintiff's yield losses.

9. In addition to reduced yields, the hail storm caused significant quality deficiencies. Pursuant to the Policy, quality deficiencies reduce an insured's "production to count" based on the "quality adjustment factor" prescribed by the Policy. On April 10, 2003,

2

Case 3:14-cv-03045-MWB   Document 2   Filed 08/06/14   Page 2 of 9

AGIC confirmed that Plaintiff was entitled to quality adjustments and paid Plaintiff an additional indemnity in the amount of $1,879.00.

10. Despite AGIC's correct conclusion that Plaintiff was entitled to an additional indemnity payment, it incorrectly calculated the amount of the payment. Plaintiff and AGIC then exchanged correspondence and information over the next several months in an effort to ensure that the quality adjustments were properly applied.

11. Before Plaintiff and AGIC reached a final resolution on the amount of indemnity owed for quality deficiencies, AGIC was declared insolvent and placed in liquidation. In accordance with the instructions provided by the Office of Liquidator for AGIC, Plaintiff submitted a Proof of Claim on August 22, 2005. Plaintiff's Proof of Claim was comprised solely of the outstanding indemnity owed for quality adjustments of his 2002 soybeans.

12. On October 3, 2005, RMA notified Plaintiff that due to AGIC's liquidation, RMA was assuming responsibility for servicing the Policy. RMA then sent a letter to Plaintiff informing him that it would review his claim for quality adjustments and make a determination on any additional indemnity owed.

13. Over the next several years, Plaintiff consistently sought to learn the status of his claim from RMA. On August 30, 2010, nearly five (5) years later, Plaintiff finally received a letter from RMA. However, the letter did not determine Plaintiff's claim; rather, it requested additional information. The letter also acknowledged Plaintiff's disagreement with "the quality adjustment discounts calculations" and indicated that RMA needed the information to make an accurate determination on that "dispute." Finally, the letter explained that Plaintiff had previously received indemnity payments in 2002 and 2004, and any further adjustments to his

3

Case 3:14-cv-03045-MWB   Document 2   Filed 08/06/14   Page 3 of 9

2002 claim "would impact the indemnification determinations of any and all later claim(s)." With that background, and in a blatant attempt to discourage Plaintiff from continuing to pursue his rights under the Policy, RMA offered Plaintiff "the option of withdrawing the request for Agency determination."

14. Plaintiff declined RMA's offer to withdraw the dispute and after a short extension to allow for harvest of his 2010 crops, Plaintiff provided the requested information. RMA received the additional information on December 30, 2010. On March 1, 2012, fifteen (15) months later, RMA sent Plaintiff a letter denying his claim for additional indemnity. RMA alleged that AGIC had "failed to verify the 'cause of loss'" and Plaintiff "failed to prove that the damage sustained was a 'natural cause of loss.'" Based on pure speculation and conjecture, RMA asserted that "the cause of loss is not a result of hail damage occurring on June 19, 2002, but rather from Bean Pod Mottle Virus (BPMV – disease) from an insect infestation during that crop year."

15. Because of numerous errors in RMA's denial, including the fact that it addressed insured fields that were not in dispute and failed to address insured fields that were, Plaintiff administratively appealed the determination in accordance with the Policy. On December 27, 2012, RMA issued a ruling that addressed the correct fields, but erroneously applied the same flawed reasoning to deny Plaintiff's claim for additional indemnity. Specifically, RMA reiterated its contention that "[AGIC] failed to verify the 'cause of loss' and [Plaintiff] failed to prove that the damage sustained for the quality adjustments were caused by 'hail.' The cause of loss is not a result of hail damage occurring on June 19, 2002, but rather from Bean Pod Mottle Virus (BPMV – disease) from an insect infestation during that crop year."

4

16. On March 27, 2013, Plaintiff initiated a National Appeals Division hearing seeking to overturn RMA's determination that the losses were caused by uninsured events. Prior to the hearing, however, RMA rescinded its determination and the appeal was dismissed.

17. Then, on June 20, 2013, more than a decade since (1) Plaintiff submitted his claim for indemnity, and (2) AGIC investigated and paid yield and quality losses to Plaintiff, RMA issued a determination that Plaintiff had "failed to follow good farming practice (GFP) in producing soybeans grown in Cerro Gordo County, Iowa, during the 2002 crop year." Despite never seeing the fields and in direct contravention to the conclusion reached by AGIC (who actually adjusted the claim), RMA asserted that Plaintiff failed "to control the overwintered primary insect vector and disease spreading source that damaged the quantity and quality of the soybeans during this crop year." RMA assessed "the full yield and revenue guarantee for uninsured causes of loss on all units during the 2002 crop year." In other words, RMA decided that Plaintiff's losses were due solely to uninsured causes.

18. On August 6, 2013, pursuant to Plaintiff's request for reconsideration, RMA upheld the June 20, 2013 determination "as written." RMA also advised Plaintiff that should he "elect to no longer pursue this matter" by filing "suit in the United States District Court for the district in which the farm is located within one year of the date of this letter," he was obligated to repay $61,192. From this determination (the "GFP Determination"), Plaintiff initiates this action.

### RMA'S GFP Determination is Arbitrary and Capricious

19. This Court is empowered to reverse or modify RMA's GFP Determination if it is found to be arbitrary or capricious. *See* 7 U.S.C. § 1508.

5

20. RMA's GFP Determination bears no relation to the actual facts concerning Plaintiff's losses. In fact, RMA attributed the entire loss (both production and quality) to uninsured causes despite admitting that Plaintiff's area sustained a hail storm. In addition, RMA failed to take into account the weakening of Plaintiff's soybeans as a result of the hail, which is a well-recognized effect of hail damage early in the growing season.

21. RMA also ignored the evidence and testimony submitted by Plaintiff, who actually monitored the fields in question, and the fact that AGIC had previously investigated and paid Plaintiff for some of his 2002 losses. It was AGIC's responsibility to make the initial good farming practices determination, and it clearly determined that good farming practices were followed because it paid Plaintiff on the Policy. RMA's failure to respect the proper procedures and complete disregard of the relevant facts renders the GFP Determination invalid.

22. Further, despite claiming that Plaintiff's losses were caused by Bean Pod Mottle Virus due to failure "to control the overwintered primary insect vector and disease spreading source," there was no evidence, much less substantial evidence, that this virus was a problem in Plaintiff's area or that Plaintiff actually had an insect infestation. Plaintiff testified that there was no insect infestation that would have necessitated additional herbicide or insecticide. RMA unreasonably elected to rely on non-specific, non-applicable publications rather than the personal knowledge and experience of the individuals who were actually involved.

23. Even if insect infestation causing Bean Pod Mottle Virus had been a potential cause of loss in Plaintiff's area in 2002, it was never an issue in prior years and therefore could not support RMA's finding that Plaintiff failed to use good farming practices by not controlling for it. Indeed, Plaintiff makes his herbicide/insecticide decisions based on a thorough evaluation

of prior years and consistent consultation with his agronomist and chemical supplier. Even though Plaintiff and his consultant monitored the fields throughout the 2002 growing season, 2003 – not 2002 - was the first year Plaintiff was advised to specifically treat for bean leaf beetles.

24.     RMA made the GFP Determinations arbitrarily and capriciously, and without meaningful input from Plaintiff. Plaintiff was not even aware that his farming practices were at issue until 2012 – ten (10) years after the relevant growing season. RMA's attempt to raise a good farming practices issue this late in the game is barred. Moreover, RMA's motivation for rendering the GFP Determination appears to be Plaintiff's insistence that his rights under the Policy be vindicated. These circumstances, combined with the lack of evidentiary or legal support in the record, warrant a reversal of RMA's determination.

### Request for Judicial Review, Declaratory and Injunctive Relief

WHEREFORE, Plaintiff requests the following relief from this Court:

1.     Pursuant to the standards set forth in the Administrative Procedure Act, 5 U.S.C. §§ 701-06, Plaintiff asks the Court to review RMA's GFP Determination. Plaintiff further asks the Court to determine and declare that GFP Determination was incorrect, unlawful, and in violation of the Policy and the applicable standards set forth in 5 U.S.C. § 706. Specifically, Plaintiff requests that the Court enter judgment declaring that the GFP Determination was arbitrary and/or capricious.

2.     Plaintiff requests that the Court enter an order granting injunctive relief against the FCIC compelling it to retract the GFP Determination, reinstate AGIC's determination that an indemnity is owed, and direct the payment of the full indemnity, including the additional

7

payment for quality adjustment, pursuant to the calculation required under the Policy. Injunctive relief is especially necessary in this case to avoid any attempt by FCIC to again deny Plaintiff's indemnity claim based on an arbitrary and capricious rationale, forcing Plaintiff to return to Court.

3. Plaintiff also requests that the Court permit discovery and hold an evidentiary hearing in this matter because (1) the agency action is not adequately explained and cannot be reviewed properly without consideration of the entirety of the dispute in connection with Plaintiff's 2002 claim for indemnity; (2) the record is deficient because the agency ignored relevant factors it should have considered in making its decision; (3) the agency considered factors that were left out of the formal record; (4) the case is of a complexity that additional evidence will better enable the Court to understand the issues; and (5) the parties have been involved in a separate administrative appeal that is related to the issues that will likely be raised in this action.

4. Plaintiff requests a jury trial on all issues so triable.

5. Plaintiff requests that the Court award him attorney's fees, costs and such further relief the Court deems just and proper.

DATED this 5th day of August, 2014.

Respectfully submitted,

*s/Michael G. Byrne*
Michael G. Byrne
Winston & Byrne, Lawyers
A Professional Corporation
119 Second Street Northwest
Mason City, Iowa 50401

8

Case 3:14-cv-03045-MWB   Document 2   Filed 08/06/14   Page 8 of 9

Telephone: (641) 423-1913
FAX: (641) 423-8998
Email:

and

Jeff L. Todd, OBA #17713
Jared R. Boyer, OBA #30495
McAfee & Taft A Professional Corporation
10th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
FAX: (405) 235-0439
Email: jeff.todd@mcafeetaft.com
jared.boyer@mcafeetaft.com

ATTORNEYS FOR PLAINTIFF